# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

**UNITED STATES OF AMERICA**

    **Plaintiff,**

**v.**                                **Case No. 3:23-cr-0180-HES-JBT**

**NOAH MICHAEL URBAN**

    **Defendant.**

_____/

## DEFENDANT'S APPEAL OF MAGISTRATE JUDGE DECISION TO DISTRICT COURT

Defendant Noah Michael Urban, by his attorney, Kathryn Sheldon, respectfully moves this Honorable Court to vacate Magistrate Judge Toomey's detention order pursuant to 18 U.S.C. § 3145(b) and order Noah Urban released from custody pursuant to the Bail Reform Act (BRA) and the Fifth Amendment's Due Process Clause. This motion arises under 18 U.S.C. § 3145(b), which provides for de novo review of a magistrate judge's detention order. *See, e.g.*, *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) (although § 3145 "speaks of 'review' by the district judge, the court may start from scratch"); *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). A motion for revocation or amendment "shall be determined promptly," reflecting

the serious nature of detaining any defendant unnecessarily. § 3145(b). In support of this motion, Mr. Urban states as follows:

On January 10th, 2024, Mr. Urban was arrested on a criminal complaint charging him with one count of Conspiracy to Commit Wire Fraud, nine counts of Wire Fraud, and 4 counts of Aggravated Identity Theft in violation of 18 U.S.C. §§§ 1349, 1343, and 1028(A) (Doc. 1). Magistrate Judge Toomey held Mr. Urban's initial appearance on January 10th, 2024. At that Initial Appearance, the government requested detention on the grounds Mr. Urban was a risk of obstruction and a risk of flight. Judge Toomey detained Mr. Urban without deciding his risk of flight pending a Detention Hearing. The Detention hearing was originally set for January 16th, 2024, at 3:00 p.m., but had to be continued when undersigned counsel was ill with Covid-19. (Doc. 20). The detention hearing was held in full on January 19th, 2024. (Doc. 23).

When the Government makes criminal allegations that fall outside of the enumerated offenses permitting a detention hearing under 18 USC §3142(f)(1) they must demonstrate that a defendant poses a *serious risk of flight* or a *serious risk that defendant will obstruct justice* if he is not detained. 18 USC §3142(f)(2). It is the Government's burden to show by a preponderance of the evidence that such a defendant poses these serious risks. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988).

The Bail Reform Act establishes a norm that defendants should be

released, and only allows for detention pending trial under certain strict circumstances. To establish a serious risk of flight such that the Government is permitted to seek detention in a case is a high burden in the absence of a congressionally-enumerated offense allowing for detention.

**I. The Government Failed to Show There's a Serious, Concrete risk Mr. Urban Will Flee.**

It was improper for the Magistrate Judge to detain Mr. Urban and set a Detention Hearing on the government's bare allegation that he poses a "risk of flight," for three reasons. First, the plain language of the statute permits detention at the Initial Appearance only when the defendant poses a "*serious* risk" of flight, § 3142(f)(2)(A), but in this case the government alleged a mere *ordinary* risk of flight. Second, the government bears the burden of presenting some *evidence* to substantiate its allegation that a defendant is a serious risk of flight, but here the government has provided no such evidence. Third, to establish "serious risk" of flight the government must demonstrate that the defendant presents an "extreme and unusual" risk of willfully fleeing the jurisdiction if released, but the government has not met that burden here. Accordingly, it was improper to hold a Detention Hearing at all, let alone detain Mr. Urban for the duration of the case.

### A. Supreme Court Precedent and the Plain Language of the BRA Prohibit Detaining a Defendant as an Ordinary "Risk of Flight."

Ordinary "risk of flight" is not a factor in § 3142(f). By its plain language, § 3142(f)(2)(A) permits detention and a hearing only when there is a "*serious* risk that [the defendant] will flee."[1] There is some risk of nonappearance and potentially some risk of flight in every criminal case; "serious risk" of flight means something more. *See United States v. White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) (recognizing that "serious flight risk" is "narrower" than "flight risk" and is "distinct from 'risk of non-appearance' "). According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g., Corley v. United States*, 556 U.S. 303, 314 (2009) ("[O]ne of the most basic interpretative canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." (citation omitted)).

---

[1] Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis 91 (2022), https://freedomdenied.law.uchicago.edu/report.ee* Siegler, *supra* note **Error! Bookmark not defined.**, at 91 ("*[O]rdinary* risk of flight is … an impermissible basis on which to order detention at the Initial Appearance or schedule a Detention Hearing.").

**B. It Was Improper to Detain Mr. Urban Because the Government Has Provided No *Evidence* to Support its Claim that Mr. Urban Is a Serious Risk of Flight.**

Where the government's only legitimate § 3142(f) ground for detention is "serious risk" of flight, the government bears the burden of establishing, by a preponderance of the evidence, that the defendant poses a "serious risk" of flight, rather than the ordinary risk attendant in any criminal case. *See Friedman,* 837 F.2d at 49. Moreover, a defendant "may be detained *only if the record supports a finding* that he presents a serious risk of flight." *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (emphasis added); *see also United States v. Robinson*, 710 F. Supp. 2d 1065, 1088 (D. Neb. 2010) (criticizing the government for failing to present evidence of "serious risk" of flight at the Initial Appearance and saying "no information was offered to support [the] allegation"); *White*, 2021 WL 2155441, at *7 (holding that "a court may not find that a case involves a serious risk of flight just because the Government claims it does, but rather must make its own determination on the issue").

After all, the statute authorizes detention only "*in a case that involves*" a "serious risk" that the person will flee. § 3142(f)(2)(A) (emphasis added). This contemplates a judicial finding about whether the case in fact involves a

*serious* risk of flight.[2] The government must provide an evidentiary basis to enable the judge to make an informed decision, typically evidence that relates either to the defendant's history and characteristics or to the circumstances of the offense.[3] The government has presented no such evidence here.

### C. Detaining a Defendant as a "Serious Risk of Flight" Is Appropriate Only in "Extreme and Unusual Circumstances" Involving a Heightened Risk of "Intentional" Flight.

The BRA's legislative history makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[4] The government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here. Courts have articulated the elements of this extreme or

---

[2] Had Congress intended to authorize Detention Hearings based on a mere certification by the government, Congress could have enacted such a regime, just as they have done in other contexts. *See, e.g.*, 18 U.S.C. § 5032 (creating exception to general rule regarding delinquency proceedings if "the Attorney General, after investigation, certifies to the appropriate district court of the United States" the existence of certain circumstances); 18 U.S.C. § 3731 (authorizing interlocutory appeals by the government "if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding").

[3] *See* Siegler*, supra* note **Error! Bookmark not defined.**, at 109 ("Because the law demands a showing that any risk of flight is "serious," the prosecution should present some evidence to meet its burden, such as evidence about the particular arrestee's history and characteristics (e.g., past failures to appear in court) or to the circumstances of the offense (e.g., the person led the police in a high-speed chase).").

[4] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances* . . . justifies pretrial detention"—as representing the "current case law"; *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

unusual standard in different ways, but the upshot remains the same—defendants are "serious" flight risks in only rare cases. *See United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant."); *see also United States v. Runsdorf*, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) (finding that the government must establish "a *heightened* likelihood of flight that is demonstrably more than the risk posed by a generic defendant charged with a similar offense" (emphasis added)).

The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—people the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process.[5] *See White*, 2021 WL 2155441, at *7 (holding that a "case involves a 'serious risk of flight,' as opposed to a mere risk of non-appearance, if it involves a serious risk that the defendant intentionally will avoid court proceedings"). Risk of flight is not the same as risk of nonappearance, *see White*, 2021 WL 2155441, at *10, and a defendant should never be detained as a "serious risk"

---

[5] *See* Lauryn Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 725 (2017). This rule is sound policy, as the risk of a defendant becoming either a "local absconder" (who intentionally fails to appear but remains in the jurisdiction), *id.* at 735, or a "low-cost non-appearance" (who unintentionally fails to appear), *id.* at 729, can be addressed by imposing conditions of release like electronic monitoring, GPS monitoring, and support from pretrial services.

of flight when the risk of flight or nonappearance can be mitigated by conditions of release.

### D. In This Case, the Government Has Not Met Its Burden of Proving That Mr. Urban Posed a "*Serious*" Risk Of Flight Under § 3142(f)(2)(A).

Mr. Urban should be released on conditions because the government did not present sufficient evidence whatsoever to establish that "there is a serious risk that the Mr. Urban will flee" the jurisdiction under § 3142(f)(2)(A). Although the defense bears no burden of proof, it is clear from Mr. Urban's history and characteristics that he does not pose a serious risk of flight. Mr. Urban has been a long-time resident of Florida. He has significant ties to the community including all his family that lived within twenty minutes of his temporary residence. He voluntarily met with government agents across the country and remained in the community for months waiting for a warrant to issue. Eventually, he grew tired of waiting at his father's residence and took up temporary residence at an Air B&B. During that time period, he made no plans to flee the country. He has no prior arrests, and he has never failed to appear for a court date.

The evidence presented by the government was that he used an "alias" to book his Air B& B. The reason why Mr. Urban used his friend's account to book the living situation was because he did not have significant enough credit to book the house for that length of time himself. He did not change his

8

phone number. Had the government called him on the number he previously provided, he would have made himself available to them. The evidence was presented that Mr. Urban could have stable residence with either his mother or his father during the pendency of the litigation. As to the issue of whether he had travelled internationally, he is 19 years old and was not aware of all the trips he had taken as a child.

The mere fact that Mr. Urban is charged with an economic crime likewise does not render him a serious risk of flight. "In economic fraud cases, it is particularly important that the government proffer more than the fact of a serious economic crime that generated great sums of ill-gotten gains . . . [;] evidence of strong foreign family or business ties is necessary to detain a defendant." *United States v. Giordano,* 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005). The government has not presented any evidence that Mr. Urban intends to flee or has anywhere to flee to, meaning that "many of the key factors that would warrant detention in an economic fraud case are absent here." *Id.* at 1270. Because Mr. Urban does not present a "serious risk" of flight, § 3142(f)(2)(A) is not met. As neither § 3142(f)(1) nor § 3142(f)(2) is satisfied Mr. Urban should not be detained under the law.

### E. Many Conditions of Release Have Been Proven to Effectively Manage Ordinary Risk of Flight or Nonappearance.

For example, if the Court finds that the government met its burden below of establishing serious risk of flight such that a Detention Order was authorized, Mr. Urban must nevertheless be released because there are conditions of release that will "reasonably assure" Mr. Urban's appearance. Any concerns the Court may have about local nonappearance can be allayed by imposing any number of conditions of release that have been shown empirically to reduce the risk of local nonappearance. For example, a study conducted in New York state courts found that text message reminders were able to reduce failures to appear by up to 26%, translating to 3,700 fewer arrest warrants per year.[6] Holistic pre-trial services focused on providing social services and *support* to clients also reduce the risk of non-appearance across all risk levels in state systems.[7] Beyond the traditional role of Pretrial Services, this could include providing funding for transportation to court, providing childcare on court dates, and assisting clients in finding stable housing, employment or education.[8] Moreover, scholars and courts agree that

---

[6] *See* Brice Cooke et al, *Text Message Reminders Decreased Failure to Appear in Court in New York City*, Abdul Latif Poverty Action Lab (2017), archived at https://perma.cc/JCW7-JVZW.

[7] *See generally* Christopher Lowenkamp and Marie VanNostrand, *Exploring the Impact of Supervision on Pretrial Outcomes*, John and Laura Arnold Foundation, Special Report (2013), archived at https://perma.cc/R3F3-KZ76.

[8] *See generally* John Clark, *The Role of Traditional Pretrial Diversion in the Age of Specialty Treatment Courts: Expanding the Range of Problem-Solving Options at the Pretrial Stage*, Pretrial Justice Institute (2007), archived at https://perma.cc/5C8C-7HJK.

electronic monitoring is especially effective at reducing risk of flight, although it is also particularly  constricting of liberty, and consequently may only be imposed under the BRA if it is the *least* restrictive condition necessary to "reasonably assure" appearance and community safety.[9]

## II. The Government Failed to Show there's a Serious, Concrete Risk Mr. Urban will Obstruct Justice, or Threaten Witnesses or Jurors.

Beyond claiming Mr. Urban will intentionally flee, the Government also claims there is a serious risk under (f)(2)(B) he'll intentionally obstruct justice, threaten witnesses, or threaten jurors. This is a very high hurdle. To clear it, the Government must "sustain its burden of proof by clear and convincing evidence," See *U.S. v. Dodge*, 842 F. Supp. 643, 646 (D. Conn. 1994), which "requires that the evidence support such a conclusion with a **high degree of certainty**." *U.S. v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985) (emphasis added).

---

[9] *See, e.g.*, Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*, 123 Yale L. J. 1344, 1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention . . . . [T]he question of finding other ways of ensuring a non-dangerous defendant's presence at trial is one not of ability, but of will. . . ."); *id.* at 1368–74 (citing studies in both European and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight, and that it comes at far reduced cost to both the defendant and the government); *United States v. O'Brien*, 895 F.2d 810, 814–16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding that "evidence concerning the effectiveness of the bracelet alone [] arguably rebuts the presumption of flight"). *But see also* Siegler, *supra* note **Error! Bookmark not defined.**, at 185 (finding through interviews with stakeholders that electronic monitoring is overused despite the possibility of less punitive alternatives and can impose a "high pecuniary burden for arrestees").

11

The Government claims it is highly certain Mr. Urban will obstruct justice here based on the following proffer:  Mr. Urban told his co-conspirators that he had been raided by the F.B.I. and that he accessed "cryptocurrency" in violation of an agreement he made with federal officials. When federal officials came to raid his house, his computer was in the process of re-encrypting itself. It had previously been encrypted and he was strengthening the encryption. Because the F.B.I. access the computer before the re-encryption completed, they had full access to everything on the computer. That is it. So, in the Government's eyes, a few online conversations months ago, a security feature on his computer, and one refund of cryptocurrency from a gambling website equates to a "high degree of certainty" that Mr. Urban will destroy evidence in this case. These non-specific comments are "too general" to be probative in a (f)(2) analysis. *White*, 2021 WL 2155441 at *13; *see also U.S. v. Cruz*, 363 F. Supp 2d 40,47 (D.P.R. 2005). Furthermore, Mr. Urban asserts that all his co-conspirators were already aware of the F.B.I. raid that occurred due to his absence, and he asserts that he made no promises to agents to not access cryptocurrency. He further asserts that he was not "wiping" the computer but putting a stronger encryption on an already encrypted computer.

The Court should decline the Government's invitation to lower (f)(2)(B)'s bar from clear-and-convincing to something at—or below—reasonable suspicion. Even reasonable suspicion requires a "particularized and objective

12

basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014). The (f)(2)(B) inquiry requires *concrete evidence* Mr. Urban will obstruct justice in this case here—like in *Cruz*, where the Government proffered the following: the defendant threatened the CI; the defendant possessed a hitman; and the defendant also possessed a potential hit list.  Even with potential threats, a hitman, and a potential hit list, the district court in Cruz held the Government failed to clear (f)(2)(B)'s hurdle. *see id*. at 47. Cruz reinforces what the FJC states: (f)(2)(B)'s threshold evidentiary bar is high and cannot be cleared using vague assertions that he notified his friends that the F.B.I had raided his house, and that he accessed "cryptocurrency".

It is also unclear what evidence the Government thinks Mr. Urban will destroy. All his accomplices and co-defendants were immediately made aware of the raid the F.B.I. conducted on his home the day it happened in March of 2023, after his prolonged absence from the internet. He is charged with committing Wire Fraud and Aggravated Identity theft. The three-day long proffer he participated in May is the evidence, which is already in the Government's possession. So are all of Mr. Urban's unencrypted electronic devices and the tens of thousands of associated documents provided in Discovery. If there's some type of evidence Mr. Urban could theoretically destroy, he is unsure what it is. Mr. Urban is adamant that the government

has collected all his electronic devices and any concerns the government has could be adequately addressed with conditions of release banning internet accessibility as a condition.

The Government has offered no concrete evidence there's a serious risk Mr. Urban will threaten witnesses or threaten jurors, as he has done nothing to intimate these actions.

### III.   Conclusion

For these reasons, Mr. Urban respectfully asks this Court to vacate the detention order and order him released on conditions this Court deems appropriate under §§ 3142(a)–(c). Because the government has provided no permissible basis for pretrial detention under § 3142(f), continuing to detain Mr. Urban is inappropriate.

Dated:  March 15, 2024.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER, MDFL

*/s/ Kathryn Sheldon*
Kathryn E Sheldon, Esq.
Assistant Federal Defender
Florida Bar Number 1019538
200 W. Forsyth St., Ste 1240
Jacksonville, Florida 32202
Telephone: 904-232-3039
E-Mail: kathryn_sheldon@fd.org
Counsel for the Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that undersigned electronically filed the foregoing motion with the Clerk of Court (CM/ECF) by using the CM/ECF system, which will send a notice of electronic filing to John Cannizzaro, Assistant U.S. Attorney, this 15th day of March 2024.

<u>*/s/ Kathryn Sheldon*</u>
Kathryn Sheldon, Esq.
Attorney for Defendant

15